Let's turn to the third and final argued case for the day, which is Roll v. St. George, and let's make sure that we have both parties on the line. So let's start. Mr. Roll, are you here? Yeah, my name is Nehemiah Roll, Jr. Thank you, Mr. Roll. Welcome. And let me make sure, Mr. Lawrence, are you here? No. Let's see. Mr. Lawrence, can you hear us? Maybe take yourself off mute. Can you hear me now, Your Honor? Beautifully. Loud and clear. Great. So this is Roll v. St. George, docket number 19-584. We have allocated five minutes of argument to both sides. Mr. Roll, I understand that you would like to reserve three minutes for rebuttal. Is that right? Well, again, I spoke to Troy, who's the court person there. I need additional time, okay, because I was under the impression when I signed that statement, I would get 10 minutes, not five. But this is a very complex matter. I have a motion before the court, the circuit court, to strike the attorney's brief. Well, Mr. Roll, let's do this. Why don't you start arguing? When we get to the two minutes in, let's see how many, if any, questions the judges have. And then I'll see whether you, we'll see how things are going, okay? So let's take it on a roll, okay? Okay, let me start by addressing the court. Please do go ahead. Okay. Your name is William Nardini? Yes. Please proceed, Mr. Roll. Yeah, okay. I have to clear up these things because I don't know you, but I have a history at the circuit court going back almost 20 years. I don't know Gerald E. Lynch, but I do know I'm out of cures, okay? Because I have bought appeals before the Second Circuit, and my appeals have never been granted. I've never been sent down back in over 25 years before the court in the Second Circuit, the district court, ever allowed to go to trial on any of my cases. And I want to ask this question of this panel, okay, including CARES. She wondered, does anyone there have any racist or any negative bias things that they got from other people on the circuit court or outside that would not allow them to act fairly regarding my appeal? Because this is one of the most important appeals I've ever brought before this court, and if it's not sent back to the district court, I'm going to the United States Supreme Court, which I've been there. I have the ability and knowledge now. So I want to ask that bias or any kind of negative thing that would allow them, that would prevent them. I want to get this on the record from a judge in my appeal and the motions that I got, the motion I got before the court fairly. So, Mr. Rowe, we're delighted to hear your arguments. This is your time to make arguments the way this works. If you don't ask a question to the panel, we can ask questions to you. So why don't you go ahead? If you have anything you'd like us to hear, we're here for you. Okay. I see you only know that part of it, but I put it on the record about people recusing themselves. Okay. I've been, I came before the court in 1995 as a lonely, quiet government employee in Nassau County. Despite the slander, defamation from Lawrence. Okay. He submitted criminal acts against me. He's going to be taking legal steps to address that in his papers filed with this court, with the Southerners in this state. Okay. He slandered me and libeled me. And also there are judges have done the same thing. The latest one was Donnelly. Okay. I filed my first case back in 1995 against Nassau County. I worked as a Nassau County employee. I was wrongfully fired based on racism. No evidence and bias. It was published in Newsday. You can go back and get it. 1994, they interviewed me in front of my mother's house. Okay. In 1994, September. Okay. I went back to work, was not allowed to go back to work. So all of the, all of the lies, the character assassination and disparagement that's been brought against me by Donnelly. Okay. And by Lawrence, and they're using her decision. Okay. To whitewash me, to silence me, unlawful and unjustly. All, all my federal lawsuits have been litigated. And I want to just give a brief history of myself. Okay. Mr. Mr. Roll, just to remind you, you're at about three and a half minutes of your five minutes. If you would like to reserve some of your time for rebuttal, you're free to do so. If you'd like to use it all up front, that's fine too. We'll, we'll give you the option. Would you like to proceed now? Yeah, I'd like to proceed. Please, please go ahead. Let me get, let me get to the crux of the two issues that's dealing with this with my federal disenfranchisement against this plaintiff, St. George, who I know personally, but he's from the black community. He libeled and slandered me over the weekend. I'm an NACP official. Okay. Higher executive committee. He libeled and slandered me in New York state, in Nassau County, Freeport. I was a member of that branch. I'm still a member. He libeled and slandered me, character assassinated me, just simply because I wrote a letter of complaint about another NACP member who was a female who was charged with a minor of criminal offense that was before him. I complained that things weren't going right in the Hempstead District and retaliation for that. Okay. That letter. Okay. That's why this case must go to trial. He said over a whole weekend, all top state officials and even reach the national and Baltimore where I was pulled down from my position. Okay. As an executive committee and other various committees. Okay. By the branch president here in Nassau County. Okay. And I was, all based on those defamations, lies and fraud. Okay. And perjury that St. George submitted. This is the crux of the lawsuit. Okay. Now, narrative of the lawsuit. Okay. I want to talk about Tucker, Hoover versus Tucker CA 41. It's a California case. Okay. Where on this issue of absolute immunity, five minutes has expired. Okay. Mr. Roll, let's do that. You want a little extra time, Mr. Roll. Let's do that. Let's, let's pause for now. And unless the other judges have any questions for you, we'll hear from your adversary. And even though you've gone over your five minutes, we'll give you a couple of minutes for rebuttal. Okay. And that way, after your adversary talks, you'll have a couple of minutes. I appreciate that. All right. Well, and unless there are any questions from the other panel members, I'm going to ask Mr. Lawrence. I do have actually a question for Mr. Roll. Yeah. Mr. Roll, this is judge Lynch. As you said at the beginning, we've never had any prior dealings. And I certainly want to assure you that the judges recuse themselves when they have biases, where they've heard something about the case extra judicially, and no one here has recused himself or herself. That's because I guess none of the others either have any prior knowledge of you that doesn't come from their personal interactions in cases. And what I wanted to ask you, you said that this question of libel by Judge St. George- Not just libel, it's slander, defamation. Yeah, right. Okay. Defamation is the general legal term and libel and slander are variations on the same theme. You referred to that as the crux of your lawsuit. I said that's one of the things that I'm bringing as a claim against St. George- That was done over the weekend while he wasn't on the bench. Okay. All right. Yes. Excuse me, Mr. Roll, if you let me finish my question. The question is, as I read your complaint, your complaint seemed to be all about traffic tickets and how they were or were not properly administered. And there's only like one sentence that sort of says there was this defamation, but it doesn't say what was said about you that was false or why it was false or specifically to whom it was said. So I'm having a little trouble understanding how that is the critical issue on appeal when it's something that was not- Excuse me, Mr. Roll, if you let me finish the question, please. The question is, can you explain to me how that is made clear in your complaint that that is what you're really arguing about here? Well, you don't fail. You fail to read. Okay. I'm 64 years old. Okay. I've been around the block a thousand times. I graduated from St. George. I mean, I went to St. George for five years, graduated from Long Island University in 2007, January. I got a paralegal certification approved by the American Bar Association from Long Island University. If you read four, okay, it talks about, okay, and then prevent the defendant from fraudulently acting, depriving him of access to the court, preventing the defendant from engaging in willfully acts of slander, defamation, perjury, and others, and actions against the plaintiff that were false, done by the defendant to destroy the plaintiff's reputation and to end the plaintiff as an NACP member who has made valid complaints that he witnessed that St. George was misusing his power and structural adjustment. St. George was the supervising judge in Hempstead District Court. Okay. I think you've answered the question. One of the problems you see, Mr. Roll, is that when you come here and you start using your time to talk about a whole history of other cases, it tends to distract the focus from the particular things that are at issue in this case, but I think I understand what you said. You've answered my question. Thank you very much. Thank you. Pierce, do you have any questions? No, thank you. So, Mr. Roll, I'm going to let you take a couple of minutes of rebuttal, even though we've kept you beyond your time. So, let's hear from Mr. Lawrence. Mr. Lawrence, you want to go ahead? Yes. Thank you, Your Honor. I'm David Lawrence III. I'm an Assistant Solicitor General of Appalachia Judge Norman St. George. The District Court correctly dismissed the complaint sui fonte as frivolous. For instance, plaintiff states no First Amendment retaliation claim based on Judge St. George having allegedly defamed plaintiff in retaliation for plaintiff having submitted a complaint letter by another judge. This is true for three independent reasons. First, there's a three-year gap between the purported complaint letter and the alleged retaliation, so there's no temporal proximity. Second, it's not plausible that a judge would retaliate against a litigant for having complained about the conduct of another judge in another case. And third, plaintiff fails to plausibly allege that any defamation occurred, or his complaint fails to include the content of the purported defamatory statements, any basis to conclude the statements were false, or to whom the statements were allegedly made, and that seems to be the thrust of the question by Judge Litch, my opponent, a few minutes ago. Plaintiff's opening brief on appeal does not challenge the dismissal of the other claims in his complaint. He's therefore waived any such challenge. Those claims, in any event, fail to state a claim. The claims allege that Judge St. George denied certain of plaintiff's constitutional rights by declining to dismiss plaintiff's traffic tickets. But in fact, the state court record and the addendum attached to my brief shows that it was, in fact, another state court judge denied the motions to dismiss the traffic tickets. Also, due process was satisfied, where the complaint shows the plaintiff received notice and an opportunity to be heard on the traffic tickets in the state court. Also, plaintiff's conclusory allegation that Judge St. George declined to dismiss the tickets because plaintiff is African-American and the ticketing police officer is a white states no equal protection claim. Now, the clerks of the plaintiff's reply brief and his motion to strike my brief seems to be his contention that he filed a notice of appeal from the filing juncture order. But the docket sheet attached to his own brief shows it was February 8th, 2019, judgment dismissal. Then on March 2, 2019, he filed a notice of appeal from that. And then on July 17, 2019, that's when the filing junction order was entered. And although plaintiff seems to be under the impression that his earlier notice of appeal covers that later filing injunction order, it doesn't. The case law cited in my brief establishes that he had to file another notice of appeal in order to cover that filing injunction order. Unless the court has any questions, I'll ask that they affirm the judgment of dismissal. So, thank you, Mr. Lawrence. Let me ask Judge Kears, do you have any questions? I have one question about the judgment. The judgment in part dismisses for lack of subject matter jurisdiction, but then goes on to say that state law claims are dismissed with prejudice. Is that an appropriate judgment to dismiss with prejudice state law claims if the court has no subject matter jurisdiction? It would not typically be so, Your Honor. But on appeal, the subject matter jurisdiction, I believe, was the Rooker-Feldman issue. And because the plaintiff on appeal expressly states he's not seeking money damages in this action, we don't rely on Rooker-Feldman. Does that answer the question, Your Honor? Is that the only jurisdictional aspect? Right. As I recall, the district court relied on Rooker-Feldman and judicial immunity, and only Rooker-Feldman would be a matter of subject matter jurisdiction. Thank you. One minute. Judge Lynch, do you have any questions? No, no questions. I have none. So, Mr. Lawrence, you have about a minute remaining, so you may feel free to use it or rest in your briefs as you see fit. I have nothing further to say, Your Honor. Thank you. Thank you, Mr. Lawrence. Mr. Roll, as I said, even though we kept you well beyond your five minutes, if you would like to take two minutes in rebuttal, the court is happy to give you that Yeah, I just want to say this. If you go to the claims, Mr. Lawrence, who I never met, who I've dealt with, and other appeals before this one, going back 20 years, continues to commit criminal fraud, perjury, okay? All right. And I say right in my complaint, plaintiff did this complaint against the defendant, St. George, because at the beginning, for willful and criminal retaliation, the plaintiff is violating the plaintiff's constitutional rights pursuant to the First, Fifth, and Fourteenth Amendments. So, again, read my motion. I quote him. He's a liar. I never met this man, okay? All right? Even though he is opposed, he has represented the state in other appeals that are brought against state officials and other individuals in the court over this last 20 years. One minute. He's a liar, all right? And you judges, you take judicial notice from my complaint, what he just said, and what made my motion. I back it up with documentary proof, okay? All right? This is what I'm talking about, okay? And especially if a Black judge can see, they'll put their, on the Second Circuit, can see what's going on. It appears he's been there since 19, he's got appointed in 1979 by Jimmy Carter. And then I'm not a Democrat or Republican, I'm an independent. And the news, not needed. Because if this, Coney Barrett can say for a white that they wanted to give extra time as a criminal on the federal level, even though he was selling shoes to disabled people in a fraudulent, okay, she said she went back and constructed, he would not be a danger to society and denied him saying that he was a persistent, okay? And she did, that's public record that she said in her testimony. The question is, will you white justices and will Kears, who's Black, look deep into my complaint, my cases and all my papers to see the validity of what I'm saying, okay? All right? And the claims that I'm making against St. George, okay? One minute has expired. I just want to say one more thing. Sure, Mr. Rhodes, please finish up. Yes, absolutely. I want two circuit judges, the new one, Democrat or Republican, put by Trump and Carter, I mean, by Obama, okay? This comes from the Hoover v. Tucker case, it was a California case, okay? And they say, I just want to read this real fast. Defendants asked to impose sanctions on the state. They declined to do so. Then they turned to the Civil Rights Act, which was called the Ku Klux Klan Act of 1871 to protect the newly freed slaves from political terrorism, economic deprivation. And they said, okay, and I quote here, in 1996, the Congress amended the section 1983 and added the above following with respect to judicial immunity. In an action brought against a judicial officer for an act of remission taken in such officer's judicial capacity, injunctively shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. As we read this provision, it limits the power of the court recognizing poor men to instances where either the conduct could be enjoined were subject to an earlier declaratory judgment or earlier relief that was not available. Okay, thank you. Mr. Roll, let me just ask whether any of the other, hang on, hang on. Let me just inquire whether any of the other judges has any questions for you right now. No, no questions. Okay, so Mr. Roll, hang on, just one second. Sir, we've given you more than the five minutes you would ask for extra time. This is one of the main legal issues in this case, and you won't let it get on the record. Sir, we're happy to accept. We've considered your oral argument. We're going to adjourn. Sir, your time has expired now, and we appreciate your argument. We will consider everything you've submitted. We will consider all of the arguments by the parties today, and we will reserve decisions. So thank you very much for participating in oral argument, and Mr. Lawrence, we thank you as well.